Case number 23-5221, USA v. Terrell Trammell. Argument is not to exceed 15 minutes per side. Mr. LoSavio, you may proceed for the appellant. Thank you, Mr. Attorney. May it please the Court and Counsel, I'm Michael LoSavio, appointed under the CJA Act to represent Mr. Trammell. Mr. Trammell is very invested in his case, so looking at both these issues as well as a variety of things involving Brady v. Maryland. But our focus here is on this sort of litany of things I've laid out as a result of his trial. And they fall into sort of these categories. It's the Rule 29 issues. Then there are some issues going to sentencing guidelines and the calculation. Then there's like an evidence issue thrown in. And then there's a whole issue regarding the propriety of charging him with these multiple counts of being a felon in possession of a firearm. Now, we've raised as a matter of plain error that as well as conflicts with the Supreme Court's ruling in Bruin in terms of the Second Amendment. I think Alvarado that came out a couple of weeks ago pretty much said, we don't review this on plain error review because it is unsettled between the circuits. Some of the circuits have said, right, you cannot arrest somebody for being a felon in possession or something similar. And then other circuits say, yes, you can. This is consistent with Bruin. We did note in the 28J letters that there are several cases pending before the Supreme Court. We may have opinions by June, which we hope will clarify the issue of what ultimately is the impact on 922 from the Second Amendment as interpreted under current jurisprudence. One of the big issues in this case is relating to whether or not Mr. Trammell was responsible for hurting the FBI agent. Whether he injured him, obstructed him, impeded him in the course of his duties. That both has an impact as to that particular count. But more importantly, it goes directly to his sentencing guidelines calculation where at least 10 points were added because of that one incident. But you did not object to the sentencing guidelines. Your client did that. I mean, I recognize you weren't trial counsel. There was no objection to the sentencing guideline calculations, were there? There was no objection, no, Your Honor. Okay, so is it waived? It's at best forfeited because that, of course, benefits me. I actually think it was probably a waiver. I think that rather than the absence of objection, I think that they consented to the scoring of the guidelines, did they not? Possibly, but I do not recall, Your Honor. They affirmatively consented that these guidelines are correctly scored. That's a waiver, I think, rather than a forfeiture. I would have to go back and check, Your Honor. As opposed to simply being friendly people. If we go back to the incident involving the FBI agent, and this whole case reads somewhat like a movie script. So they're leaving the apartment. They're running out to, or they're walking to the car. All of a sudden, they see flashing lights, and they run to the car. Trammell gets in on the passenger side. The kid gets in on the driver's side. And they're about to take off when the agent comes in. Gets out, and as they're going out, he's coming in. The allegation is that they hurt him. They rammed into his car intentionally. But everything would show that this all happened in a split second. There was no evidence of intention on the part of the driver. And there was no evidence that Mr. Trammell was telling him, go do this. Aiding and abetting to drive, drive, hit him, which would be required because this is an independent crime from anything else that's going on in this case. The government's, I think, Exhibit 51C. It was like a drawing of it, and you'll just see. Maybe the car had gone a foot or two, Trammell's car. The government, the agent's car, had just come right in, and he'd leaped right out. Not... I wouldn't have done it, but... And so everything was just a misadventure due to that rolling circumstance. But isn't that, aren't these factual issues for the trier of fact, and for the jury to resolve? And I recognize those are good arguments to the jury, but normally we don't review facts. I mean, unless there's, no reasonable juror could possibly come to this conclusion as our standard on insufficiency of evidence. Yes, and we contend that it was unreasonable for the jury... For any juror. Any juror to have made that finding just on... Okay, but I mean, you're arguing the intent of the driver, the intent of the passenger. I mean, that's classic. None of which we... Factual matters, right? Yes. And that's why we have juries, right? Yes, but because there was no showing of the driver's intent, there's no showing of intent by Trammell. There's no showing of his support for the driver. It's circumstantial, isn't it? I mean, and the jury can rely on circumstantial evidence of intent. They could, but we would submit there's not even circumstantial evidence, given that this is a rapidly developing situation that happens in a split second. All right. So... Okay, I think I understand. Is that the main gist of your argument here today, is the sentencing guidelines and the applicability of this particular part that wasn't really raised at the time of sentencing? Right. Well, we also raised under pretty much everything, these are objections under Rule 29, that he's saying the judge should have issued an acquittal on these cases. We also bring in the question of whether there was actually a conspiracy, because that's the big charge here. And there was a lot of evidence, a lot of talk about Frank Trammell, Terrell Trammell's brother, having been involved in the trade. But Terrell Trammell was in prison when Frank was doing this. Frank got arrested, then Terrell gets out. So he's not helping his brother. But he's driving his brother's car, is he not? He is driving his brother's car. And then he's also selling drugs to his brother's clients. Some of them were potentially his brother's clients.  So, I mean, the inference is the brother is consented to use of the car, use of his client's list, and they're cooperating together, even though one of them is in prison now. I mean, isn't that a reasonable inference? I would say no, because it's all based on the family relationship between Frank and Terrell. No, even if he's not his brother, you're driving your friend's car, and you've taken over your friend's drug business. I mean, divorce the fact that they're brothers. I mean, doesn't that kind of show evidence of a conspiracy, of an agreement? Of an agreement, that's all. That's what a conspiracy is, is an agreement of— Between two to continue this. It doesn't show the agreement. It does show that he's— Doesn't it show there is an agreement? It doesn't. Well, he didn't steal his brother's car, did he? Who knows? Okay, who knows. All right, maybe he did. Somehow he got the list of the clients anyway. Yes, but then clients— He's back in town. Okay, and irrespective of the brother, you've got two other people here, don't you? You've got the girlfriend, and you've got the other person found in the— The juvenile, yes. In the apartment, and so all you need, a conspiracy, you only need one other person. Don't they have a couple other people here, too? Yes, there's the allegation that he was in a conspiracy with Jamila Butler. That was the house where they found the guns and found a lot of narcotics. But again, there's nothing to separate him from her. There was some testimony that he would like to visit the house periodically, but they apparently were intimate with each other. So if she's a girlfriend and he's a boyfriend, that's consistent with that behavior and not being part of agreeing to run a drug stash house, as was alleged in this case. Ms. Butler said that even the gun that was found, she said, these are my guns. Weren't there scales found, drug scales and drugs, too? Full paraphernalia and narcotics, yes. So it's more than a girlfriend-boyfriend relationship when you've got all this drug materials. If they were, in fact, knowledgeable of each other's conduct. But she testified and she didn't say that. All right, we go back to reasonable inferences, though, that the jury can use. Isn't that a reasonable inference that maybe she's involved? Well, I have counseled my children to always be careful of who they date. That could be something they will choose on their own. And since the narcotics in the guns were out of sight, it is reasonable he didn't know. Oh, I see. His fingerprints were found on one of the guns, weren't they? Or his DNA? DNA, yes. As we noted, that gets into a whole other area regarding reasonable inference because DNA traces can be planted by any cause. Like one gun had four people's DNA on it. It could have been somebody that shook hands with Terrell Trammell and then transferred that material to the handle or whatever part of the gun it was found on. It's a really difficult area that's developing now. It was not developed at trial, but we submit that was more than enough to say, these aren't his guns. So thank you. Does the court have any questions? I have none. Apparently not. All right. Thank you very much, gentlemen. May it please the court. Terry Cushing for the United States. Your Honors, I think I'll start with the guns where the court left off with my colleague on the other side. The DNA was found on one of the guns in the car. And this claim about DNA transfer, there was absolutely no evidence in the trial record about DNA transfer. All this is first put before the court here on appeal. So there was no evidence. The defense didn't put any evidence to support that claim here on appeal. So the jury had the DNA, but they had more than that. They had Trammell in the car with the guns. My colleague on the other side in his briefs say that the guns were at the juvenile's feet. Well, they were not when they were found. The juvenile was in the back seat. Trammell was in the front seat, but it doesn't make a whole lot of difference because Trammell was there. Possession, of course, can be joint. It was there with his $961 that the police found, his drug proceeds. The gun in the kitchen of the apartment was found on a kitchen cabinet. That is the gun that Trammell traded drugs for. I can't remember his first name, but Mr. Lewis testified that he was a customer, first of Frank's. And Frank gave Mr. Lewis Trammell's contact information. He contacted him after Frank was arrested and started buying drugs from him. He bought drugs from him in that apartment. And the gun that was found in the apartment was also found with the drugs. There was evidence that Trammell dealt drugs in the apartment. There's evidence that he would go to the apartment before he went to distribute drugs in some of these controlled buys. So there's ample evidence both that the guns, that he possessed those guns, and that he was using this apartment as a drug stash house. Where did this gun come from? The gun was originally bought by a Terry Lewis. That's why I'm having trouble with the son's first name because the father bought it. He was Mr. Lewis's father. He gave the gun to him as a birthday present. And then when Mr. Lewis didn't have enough money to buy drugs from Trammell. He gave it to Trammell as part of the consideration? Exactly. He traded the gun for drugs instead. And that was the gun. And they traced that gun through the ATF records. So that was his gun. If I can segue to the sentencing when we're talking about this apartment being used as a stash house. We don't really need to get there because the defendant waived those issues here on appeal. This is not just a forfeiture. He did not just fail to object on the district court. And I think Judge Griffin asked where that was or did he go through the calculations. The sentencing transcript is record 121. And pages 569 to 571 is where the district judge goes through each one of these calculations with the attorneys. And he says, is this right? And defense attorney for Mr. Trammell answered, yes, judge. So that's a waiver. He not only gave him the opportunity that the rules give him to object to the pre-sentence report. He gave him the opportunity at sentencing to object to the specific adjustments, the specific calculations. And he said, yes, he agreed with the calculations. That's a waiver. He also can't argue substantive reasonableness here because he got the sentence he asked for. He asked for a sentence within the guidelines range. He even asked the judge, just don't sentence me to the top. Maybe sentence me to the middle. And the judge sentenced him to the low end. So he can't raise substantive reasonableness here either. He asked the judge for a guideline sentence. He got a guideline sentence. So yes, judge. Sorry, I'm looking at the screen. I'm supposed to do that. In that colloquy, the defense counsel was agreeing that the judge was correctly reading the text as opposed to agreeing with the substance of what the judge was saying? Well, if the judge had just said, this is what the pre-sentence report says, is that what, do you agree that's what the pre-sentence report says? Then we'd have a different case and we'd be talking forfeiture and plain error. But the judge went through the calculation and asked defense counsel, is that right? He didn't say the pre-sentence report says this. He says, this is the calculation. Is that right? And he said, yes. So that looks like waiver to me. But even if we go plain error, as we talked about in our brief, these adjustments were properly imposed. I went through the Stash House facts. Using the car as a weapon, this argument that one commentary can't expand another commentary is completely without authority. It's commentary. Definitions of terms are often contained in commentary. And the commentary that the defense is objecting to here is the commentary for the actual guideline that applied to apply the base offense level and the adjustments. So the definition's in that guideline's commentary. And he wants to say it's confined to the general definition in Chapter 1. And that's just not, there's no basis for that. There's no authority for that. And there's no logical reason why that should be. And the more general definition in Chapter 1 even provides for expanding the definition within the guidelines in Chapter 2. So there's no good objection to that. The fleeing, the injury an officer in flight from a crime, well, he was coming from his Stash House. And he possessed guns as a convicted felon at the time. So he was in the midst of his crimes when the police came to arrest him. And he tried to flee. And in fleeing, again, he assaulted this officer, injured this officer pretty severely. So he does not show plain error here. The question about the sufficiency of the evidence, he wants to confine things to the juvenile and what the juvenile did. But Trammell was clearly in command here. The facts show that he was in command. Yes, Judge? Oh, I thought you were asking a question. I thought I heard something. Sorry, Judge. But he was in command here. He's the one that yelled, cops. They were just walking down the stairs. They weren't running at that time. They weren't running to their car until the police showed up. So they jumped into their car and they tried to get away and to say that they can't be held responsible for the assault on this officer when what they should have done was raise their hands and follow the instructions of the officers. So jumping in this car shows all the intent we need to intend to get away no matter what they did. And it's a general intent crime. So just the general intent to assault. And the facts here show that they intended to do whatever they needed to do to get away. And they did. They ran into this officer. Was that a jury question? Was it presented to the jury? Absolutely. So as all three of the judges observed, I think, here, that this was a question for the jury. There was sufficient evidence for a rational jury to find, by circumstantial evidence, of course. And, of course, we have some correct evidence that actually ran into the officer. So we have plenty of officers testifying to that. How hurt was the officer? He had contusions. I think he had a concussion. I list them in the brief and I apologize for not having his injuries right off the top of my head. That I don't know, Judge. I just know he was pinned to the car and the officers finally got the car off of him after they pulled the two defendants out of the car. And nobody was at the driver's wheel. But below, we conceded that the juvenile was likely the one driving. At any rate, I'm not sure. But he was certainly injured. And injured plenty enough for an assault to support the imposition at the sentencing, which the defense does not contest here. So the extent of his injuries, I mean, the intent to assault, the assault itself, doesn't require specific injuries. But this officer was injured. So, Your Honors, if you have any other questions, I'd be happy to answer them. I have none. All right. Thank you, Your Honors. And I ask the court to affirm the district court. Thank you. Thank you. Thank you. We'll hear rebuttal if there's rebuttal. Just real quick. The instance with the officer, with the FBI agent being hit, he was bruised, he was hurt. If there was an intent to really, really, really hurt him, then the kid wouldn't have stopped. He would have just kept driving forward, and that would have crushed the agent between the door and the frame of his house, frame of the car. Rather, the agent, he stopped when this happened. The agent was able to get his gun out and shot eight times, I think, into the car. So he was in control. There was nothing to show that they meant to do that, and especially that Terrell Trammell was saying to the kid, do this. It depends on how bad he wanted to hurt the officer, not whether he wanted to hurt the officer or doesn't. Yes. But it's, if you're looking for evil intent or an inference of evil intent, the facts, in this case, the actions of that kid don't support that. Related matter on the DNA traces, the government, Mr. Trammell didn't put anything in the record about how trace evidence gets there, but neither did the government. All they said was there is DNA traces on this gun. They never made a connection saying, and that shows possession, because possession is necessary for that transfer. So I think that would be a failure of a showing there. Does the court have any other questions? No. All right. Thank you very much. Thank you very much, and the case is submitted.